### FLOWER & AL. vs. JONES & GILMORE.

If a paper, rejected when offered as evidence, be accidentally put with the rest, and taken out with the jury, this circumstance will not necessarily require a new trial,

The principal must relieve the agent from any responsibility properly incurred.

APPEAL from the court of the eighth district.

PORTER, J. delivered the opinion of the court. The petitioners state that they formerly transacted business in New-Orleans as commission merchants, and in that capacity acted on behalf of the defendants, in shipping on their account, to one Henry Thompson of Baltimore, 74 bales of cotton. That Thompson sold 35 bales of this cotton to one Barrie, junior, for $3250 44; and that the petitioners erroneously supposing that Barry would pay for the same, gave the defendant credit for the nett proceeds of the sale, and drew on Thompson a bill of exchange for the amount. That Barry and his endorser both failing, Thompson drew on the petitioners for the sum he had advanced them on the sale of the cotton. That they resisted the demand, but were compelled

by a judgment of court to pay it; and that

they have expended $400 in defending the suit which Thompson brought against them. The petition concludes by praying judgment against the defendants for these sums, and interest and costs.

The defendants pleaded the general issue. The cause was submitted to a jury in the court below, who found a verdict in favour of the plaintiffs for $3220 44-100. An application was made for a new trial, and overruled; and judgment was rendered conformably to the verdict. The defendants appealed.

The correctness of the opinion of the judge in refusing a new trial will be examined after the merits are enquired into, as it mainly depends on the weight which should be given to evidence the plaintiffs introduced.

The plaintiffs, it appears, were commission merchants in New-Orleans, and transacted business for the defendants as general agents. In the year 1818, the latter sent them some cotton, which they shipped, with the approbation and consent of the appellants, to one Thompson, of Baltimore, to be by him sold on their account and risk. This shipment was made on the 31st December, 1818. The

EasternDist, agency of the plaintiffs up to that time, and the
June,1828, correctness of the course they pursued, have
FLOWER & not been disputed; but it is urged that all the
AL, ulterior proceedings on their part were irregu-
vs,
JONES & AL, lar, and that they have made the transaction
their own by the manner in which they acted
in drawing the funds out of Thompson's hands,
and in failing to give regular notice to the de-
fendants.

In examining this ground of defence, we
may take, as admitted, the principles of law
which were forcibly urged by the counsel of
the appellants in the argument. It may be
true, that the moment Flower communicated
to Thompson the names of the persons for
whom the cotton was shipped, that Thompson
became the factor of the principal; that Flow-
er ceased to be the general and became the
special agent of the defendants. But whether
any or all of the propositions be true, if the de-
fendants have ratified and confirmed the con-
duct of the plaintiffs in regard to this transac-
tion, it matters not in what capacity they acted.

No express ratification is shewn, but one
equally as strong is derived from the various
communications made from time to time to the
appellants, and their failure to communicate

any disapprobation of it. The contract of mandate may be formed, tacitly as well as expressly. *Semper qui non prohibet pro se intervenire, mandare creditur*, was a maxim of the Roman law. Merlin, in the *questions de droit*, gives a number of instances, much stronger than that now before us, where silence by the principal, on the receipt of letters, was deemed in every respect equal to an explicit and positive ratification of the acts of the agent. *Merlin, questions de droit, verbo compte courant, vol.* 1 *p.* 482; *Manuel de droit francais par Paillette, note on* 1985*th article of nap. code.*

The assent which the law raises from the failure of the defendants to make any objection to the conduct of the plaintiffs, is proved by the following evidence:

On the 24th April, 1819, they forwarded an account current to the defendants, at the bottom of which it is stated, by way of note or memorandum, that 74 bales of cotton belonging to them had been shipped on their account and risk to Henry Thompson for sale.

On the 31st July of the same year, in another account, they give the appellants credit for the amount of the cotton shipped to Thompson, and for sale by him.

Eastern Dist.
*June,* 1828.

FLOWER &
AL.
*vs.*
JONES & AL.

Eastern Dist.
*June*, 1828.

FLOWER &
AL.
*vs.*
JONES & AL.

In a third account, furnished June 1, 1820, the defendants are charged with 1200 dollars, paid by the plaintiffs, on their account, to Thompson, and the balance of 2320 dollars 44 dollars, being unsettled by Thompson, is inserted in the body of the account, by way of memorandum, but not carried into the columns.

And on the 31st July, 1821, in another account, the defendants are credited with 577 dollars and 65 cents, a part of the sum of 1200 dollars, which had been formerly charged them, as paid to Thompson, it being the proportion due by other persons, whose cotton was shipped by the plaintiffs at the same time as the defendants, and sold to the same persons by Thompson.

The reception of these various accounts, without any opposition being made on the part of the defendants, up to the commencement of this suit, a period of six years, is in law a ratification of the conduct of the plaintiffs in shipping this cotton, in receiving the proceeds, and is an acknowledgment of the liability of the defendants for the balance, due when Thompson's claim against the plaintiffs was settled.

Eastern Dist,
*June*, 1828.

FLOWER &
AL.
*vs.*
JONES & AL;

In addition to this, we have it in evidence that when the plaintiffs were sued by Thompson, one of the defendants went in company with W. Flower to the counsel who was engaged to defend it, and stated to him that he was interested in the suit.

It is now contended, the plaintiffs did not communicate as quickly as they ought to have done, intelligence of the dishonour of the bill taken by Thompson; and a good deal was said of the propriety of admitting evidence of the copy of a letter written by the plaintiffs in October, 1819, the receipt of which is denied by the defendants. Whether the testimony was sufficient or not, we need not enquire; being of opinion that after the assent given by the defendants to a charge against them, in various and subsequent accounts current, for moneys paid on account of the non-payment of Barry's note, there was such a ratification of the acts of the plaintiffs, as discharges them from the responsibility they may have incurred by the alleged improper management of the business entrusted to them. Acts of the principal should be construed liberally in favour of an adoption of the acts of the agent; and an implied assent has the same effect in waving a

Eastern Dist.
June, 1828.

FLOWER &
AL.
vs.
JONES & AL: right of action for misconduct that an express one would. *See Livermore on agency. vol. 1, p.50 and 338, 392, 396, and the authorities and cases there cited.*

It is again urged that Thompson, by blending the sale of the defendants' cotton with his own in Baltimore, made the debt his. Supposing this position to be correct, on which we express no opinion, the plaintiffs are not responsible for Thompson's misconduct. They were used as the medium of communication between the principal and the foreign factor, and through them the funds proceeding from the sale were to be transmitted. So far as they have failed in that duty, they are responsible; but they are not answerable for the misconduct of the factor in Baltimore.

But it is said they have made themselves so: *first*, by accepting the bill Thompson drew to replace the advances he had made on the cotton; and *second*, by not using the legal means they might have urged in defence of the action Thompson instituted on this bill.

The acceptance did no injury to the defendants, for the plaintiffs afterwards refused to pay it, and compelled Thompson to bring suit on it, where every matter of defence was open

that would have been on the original transac- tion.   The defendants had notice of the action brought by Thompson, and they chose to trust it to the plaintiffs, who appear to have honestly used all the means in their power to prevent judgment being rendered against them.   The additional proof now produced does not appear to us to vary the case.

A question has been made, whether the plaintiffs had a right to bring this action before they paid Thompson the amount of the judgment against them.   There is no doubt they have that right.   The agent can maintain a suit against the principal, not merely for repayment, but for indemnity; and the latter can only be released by producing an act by which the creditor accepts him in the place of the agent, or by paying the debt.   The reason of such a rule is obvious.   As the agent is obliged to transfer to the principal all rights which he might have acquired under the power of attorney, the latter must release him from any obligation he might incur in the performance of it.   *Dig. Liv.* 17 *tit. l.* 45; *Pothier contrat de mandat, No.* 80.

There remains for consideration the motion made for a new trial.   A paper was presented

FLOWER &
AL:
*vs.*
JONES & AL,

in evidence, and rejected by the court. Thro' mistake of the clerk, it was put up among the documents and carried out by the jury. Whether it was read by them or not we do not know. The defendants insist it *may* have materially influenced their judgment. The plaintiffs contend that if they did notice it, they must have recalled its rejection by the court, and have given it no weight in making up their verdict.

A case has been read from the reports of Massachusetts, where, under precisely similar circumstances, a verdict was set aside; and the opinion of that court would have great weight with us, if we were not placed in an entirely different situation. In that country, if we mistake not, all the facts of a case are tried and settled by a jury. Here we sit, not merely as a court for the correction of errors in law, but with the power to revise the conclusion drawn by the inferior tribunal from the facts. The court in Massachusetts being therefore bound to take the facts from the jury, did right not to receive them, if any irregularity occurred in the proceedings, because it could not know what influence that irregularity had on their finding. Here, the whole of the evi-

dence comes up, and is spread before us for
our judgment. We are therefore enabled to
know whether the mistake had or not an influence on the minds of the jury. In the present instance, the facts proved lead us irresistibly to the conclusion that, without this paper, the jury could have found no other verdict. If they had, our duty would have compelled us to reverse it, for the case depends not on the weight to be given to evidence, but on questions of law.

We cannot therefore turn the parties over to a re-investigation, which must end, as it is now about to do, by our judgment. If the case were a doubtful one, we would remand it. If improper evidence had been admitted to go to the jury, we would, as we have heretofore, send it back. But here, in the uncertainty we are, whether they perused the paper or not, the presumption that, if they did, they remembered the decision of the court that it was not evidence, and the certainty that there is ample evidence to sustain the verdict without it, the judgment of the court below must be confirmed.

It is therefore ordered, adjudged and de-

Eastern Dist.
*June*, 1828.

FLOWER &
AL.
*vs*
JONES & AL.

creed, that the judgment of the district court be affirmed, with costs.

*Hennen* for the plaintiffs—*Ripley* and *Mc-Caleb* for the defendants.